UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
THOMAS GESUALDI, LOUIS BISIGNANO,
MICHAEL O'TOOLE, DARIN JEFFERS,
MICHAEL BOURGAL, FRANK H. FINKEL,
MARC HERBST, THOMAS CORBETT, ROBERT
G. WESSELS, and ROCCO TOMASSETTI, as          MEMORANDUM & ORDER
Trustees and Fiduciaries of the               No. 25-CV-3247 (JS)(ARL)
Local 282 Welfare Trust Fund, the
Local 282 Pension Trust Fund, the
Local 282 Annuity Trust Fund,
and the Local 282 Job Training
Trust Fund,

                    Plaintiffs,

          -against-

ADRIA INFRASTRUCTURE LLC, and
ADRIA TENANT FIT OUT LLC,
*jointly and severally,*

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:     Arthur Joseph Muller, Esq.
                    Trivella & Forte LLP
                    1311 Mamaroneck Avenue
                    White Plains, New York  10605

For Defendants:     No appearance.

SEYBERT, District Judge:

        Presently before the Court is a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b) ("Motion") filed by Plaintiffs Thomas Gesualdi, Louis Bisignano, Michael O'Toole, Darin Jeffers, Michael Bourgal, Frank H. Finkel, Marc Herbst, Thomas Corbett, Robert G. Wessels, and Rocco

1

Tomassetti, as Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, Local 282 Pension Trust Fund, Local 282 Annuity Trust Fund, and Local 282 Job Training Trust Fund ("Plaintiffs") against Defendants Adria Infrastructure LLC ("Adria Infrastructure") and Adria Tenant Fit Out LLC ("Adria Tenant", collectively with Adria Infrastructure, "Defendants").  (See Motion, ECF. Nos. 12-17.)[1] For the reasons explained herein, Plaintiffs' Motion is GRANTED in part and DENIED in part.

BACKGROUND

Plaintiffs are Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, Local 282 Pension Trust Fund, Local 282 Annuity Trust Fund, and Local 282 Job Training Trust Fund (collectively, the "Funds").  (See Compl., ECF No. 1, ¶ 3.)  Both Defendants are New York limited liability companies and have business offices located in the state of New York.  (See id. at ¶¶ 12, 14.)

The Funds provide pension, health and welfare, and other benefits to covered workers, retirees, and their dependents.  (See id. at ¶ 9.)  The Funds were established pursuant to the terms of

---

[1] Plaintiffs' Motion was filed at ECF No. 12. In support of the Motion, Plaintiffs also filed three supporting affidavits, with exhibits. (See Supporting Affidavits, ECF Nos. 13-15.) Plaintiffs' Motion is also supported by a memorandum of law. (See Supporting Memorandum, ECF No. 16). Hereafter, unless otherwise indicated, the Court shall refer to the Motion, Supporting Affidavits, and Supporting Memorandum collectively as the "Motion."

several collective bargaining agreements between Building Material Teamsters Local 282, a labor organization ("Union"), and employers including Adria Infrastructure.    (See id. at ¶¶ 7, 16.) Specifically, Adria Infrastructure executed the Local 282 Mechanical Trades Contractor's Agreement that first went into effect on July 1, 2014, and was subsequently renewed through June 30, 2029 ("CBA").    (See id. at ¶ 16).    The Funds are maintained according to the terms of the Amended and Restated Agreement and Declaration of Trust ("Trust Agreement"), which is incorporated into the CBA by reference.    (See id. at ¶ 8.)    The Funds are thus "employee pension benefit plans" and "multiemployer plans" within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA").    (See id. at ¶ 5); 29 U.S.C. §§ 1002(3), and (37).

The CBA requires employers, like Adria Infrastructure, to make timely and complete contributions to the Funds on behalf of all covered employees.    (See Compl. ¶ 19.)    Employers must also "submit remittance reports to the Funds[,] which identify the employees who performed work covered by the CBA and to state the number of hours each such employee worked in covered employment." (Id. at ¶¶ 18-19.)    If employers fail to do so, the employers are liable to the Funds for certain damages.    (See id. at ¶¶ 20-21.)

Between July 2020 and July 2022, Adria Infrastructure submitted remittance reports to the Funds, but underpaid the

3

contributions owed.  (See id. at ¶ 34.)  From December 2021 through October 2022, Adria Infrastructure submitted late contributions.  (See id. at ¶ 39.)  Since November 2022, Adria Infrastructure also has neglected to submit any remittance reports or contributions to the Funds.  (See id. at ¶ 29.)  Thus, the Funds demanded Adria Infrastructure submit the missing remittance reports and underpaid and unpaid contributions, but Adria Infrastructure has failed to do so and has not otherwise responded to the Funds' demand.  (See id. at ¶ 32.)

Pursuant to the terms of the Trust Agreement, employers are also subject to periodic audits of their books and records concerning the employers' contributions to the Funds.  (See id. at ¶ 51.)  Adria Infrastructure submitted "pertinent books and records to audit for the period of March 7, 2019, through December 28, 2021" and submitted Adria Tenant's records relevant to that period as well ("Audit #23-0186").  (Id. at ¶ 44.)  A review of these records revealed employees who performed covered work and were included in Adria Infrastructure's remittance reports were on Adria Tenant's payroll.  (See id. at ¶ 45.)  Moreover, Defendants were both incorporated the same day and are believed to share the following commonalities: owners, supervisors, agents, employees, business purposes, registered and actual business offices, facilities, customers, and suppliers.  (See id. at ¶¶ 62-68, 70.)

4

Defendants also share centralized control of labor relations and common or interrelated operations. (See id. at ¶¶ 69, 71-72.) Therefore, Defendants are believed to be a single or joint employer, and Adria Tenant is believed to be Adria Infrastructure's alter ego. (See id. at ¶ 73.)

Audit #23-0186 ultimately determined Defendants owed unpaid contributions in the amount of $17,481.68, plus interest and audit fees. (See id. at ¶ 48.) The Funds demanded such payment from Defendants by letter dated April 25, 2023. (See id. at ¶ 48.) The Funds sent a second demand letter to Defendants on June 6, 2023. (See id. at ¶ 49.) To date, Defendants have not paid any portion of the outstanding audit balance. (See id. at ¶ 50.)

On or around April 2, 2025, the Funds again sent Adria Infrastructure a written demand for an audit of both Defendants' books and records for the period beginning December 29, 2021. (See id. at ¶ 55.) Again, Defendants neither responded to this demand nor submitted any required documents for audit. (See id. at ¶ 56.)

PROCEDURAL HISTORY

Plaintiffs commenced this action on June 10, 2025, alleging Defendants' failure to: make timely and complete contributions to the Funds; submit remittance reports; submit to

5

audit; and pay an outstanding audit balance. (See generally Compl.) Plaintiffs further allege Defendants violated Sections 502 and 515 of ERISA (29 U.S.C. §§ 11132, 1145) and breached the CBA in violation of Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. (See id.) Thus, Plaintiffs seek damages against Defendants, jointly and severally, for all estimated unpaid and underpaid contributions to the Funds (as determined by the Trust Agreement's terms), interest, liquidated damages, and attorneys' fees and costs. (See id. at ¶ 33.) Plaintiffs also seek injunctive relief ordering Defendants to submit to audit for the period beginning December 29, 2021. (See id. at p. 18.)

Defendants were timely and properly served with the Summons and Complaint in this action on June 18, 2025, pursuant to Federal Rule of Civil Procedure 4(h)(1), and N.Y. C.P.L.R. § 303. (See Summonses Returned Executed, ECF Nos. 5-6.) Neither Defendant has appeared, answered, or otherwise responded to the Complaint. (See Case Docket, in toto.) On April 7, 2025, Plaintiffs requested a Certificate of Default as to Defendants pursuant to Rule 55(a), and the Clerk issued an Entry of Default against Defendants that same day. (See Request for Cert. of Default, ECF No. 7; Clerk's Cert. of Default, ECF No. 8.)

Plaintiffs then filed their Motion for Default Judgment on December 18, 2025.  (See Motion.)

## DISCUSSION

### I. Applicable Law

#### A. Liability for Default Under Rule 55

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure, which establishes a two-step process.  See Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d Cir. 2011).  First, the moving party must obtain a certificate of default from the Clerk of the Court.  See FED. R. CIV. P. 55(a).  Once the certificate of default is issued, the moving party may apply for entry of a default judgment.  See FED. R. CIV. P. 55(b).

When a defendant defaults, a court must accept the well-pleaded factual assertions set forth in a complaint as true.  See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004); see also FED. R. CIV. P. 8(b)(6) ("An allegation -- other than one relating to the amount of damages -- is admitted if a responsive pleading is required and the allegation is not denied.").  However, the entry of a default judgment is "entrusted to the sound judicial discretion of the court," and a party is not entitled to a default judgment as a matter of right.  Allstate Ins. Co. v. Howell, No. 09-CV-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013) (citation omitted).  Considering the

7

Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. <u>Jiao v. Shang Shang Qian Inc.</u>, No. 18-CV-0562, 2020 WL 6370148, at *10-11 (E.D.N.Y. Aug. 11, 2020).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." <u>Gunawan v. Sake Sushi Rest.</u>, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." <u>Ferrera v. Tire Shop Ctr.</u>, No. 14-CV-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015). Accordingly, before entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." <u>Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC</u>, 779 F.3d 182, 187 (2d Cir. 2015).

B. Damages for Default Under Rule 55

Although a defendant's default is deemed "a concession of all well pleaded allegations of liability," it is not an admission of damages. <u>Id.</u> at 189. Once a court finds a defendant

liable for default, it must conduct an inquiry to determine damages with "reasonable certainty." Credit Lyonnais Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). "There must be an evidentiary basis for the damages sought by plaintiff," and a court may find sufficient evidence of default based on "a review of detailed affidavits and documentary evidence." Cement and Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012) (citing FED. R. CIV. P. 55(b)(2)) ("While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory.").

ERISA's damages provisions serve to "promote the prompt payment of contributions" and help recover costs stemming from employer delinquencies. Iron Workers Dist. Council of W. N.Y. and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1506 (2d Cir. 1995); 29 U.S.C. § 1145. In an ERISA action, if a court finds an employer failed to remit the required contributions to the plan and enters judgment in the plan's favor, a court must award the plan the unpaid contributions and interest thereon, as well as the greater of double interest or liquidated damages provided by the plan (worth up to 20 percent of the unpaid contributions), and reasonable attorneys' fees and costs of the action. See 29 U.S.C. §

9

1132(g)(2); Gesualdi v. Ara Plumbing Corp., No. 25-CV-2010, 2026 WL 31332, at *2 (E.D.N.Y. Jan. 6, 2026); Mason Tenders Dist. Council Welfare Fund v. Blade Contracting, Inc., No. 22-CV-9609, 2026 WL 850578, at *5 (S.D.N.Y. Mar. 27, 2026) ("'Costs' include auditor fees if provided for in the CBA.").

## II. Analysis

### A. Defendants Defaulted

Upon examination of the Complaint (see generally Compl.) and Plaintiffs' Motion papers (see generally Motion; see also supra note 1), including the Motion's supporting declarations and exhibits such as the CBA and Trust Agreement, Plaintiffs' uncontroverted allegations establish Defendants' default and liability for delinquent contributions to the Funds in violation of ERISA and the LMRA. See Ara Plumbing Corp., 2026 WL 31332, at *1 (citing 29 U.S.C. §§ 1001, et seq., and 29 U.S.C. § 185(a)).

### B. Plaintiffs are Entitled to Damages Stemming from Defendants' Default

#### 1. Damages for Delinquent Contributions, Interest, and Liquidated Damages

Defendants' default and Plaintiffs' testamentary and documentary evidence sufficiently show Plaintiffs' entitlement to the following damages from Defendants, jointly and severally, for delinquent contributions to the Funds, plus accrued interest

10

thereon, and liquidated damages determined by the Trust Agreement's terms (see Puccio Decl., ECF. No. 14, ¶ 53):

i.   contributions underpaid between July 2020 and July 2022, in the amount of $146.40, plus interest calculated through December 31, 2025, of $123.31 and an additional $123.31 in liquidated damages (see Muller Decl., ECF No. 13, ¶ 51(1));

ii.  interest owed on late-paid contributions from December 2021 through October 2022, in the amount of $105.34 (see id. at ¶ 51(3));

iii. estimated unpaid contributions for the period between November 2022 and October 2025 in the amount of $117,068.16, plus interest calculated through December 31, 2025, of $30,337.40, and $35,122.09 in liquidated damages (see id. at ¶ 51(2)); and

iv.  unpaid contributions identified by Audit #23-0186 in the amount of $17,481.68, plus interest calculated through December 31, 2025, of $21,012.00, an additional $21,012.00 in liquidated damages, and an audit fee of $1,834.30 (see id. at ¶ 51(4)).

Therefore, the Court grants Plaintiffs damages in the total amount of $244,365.99.

11

2. <u>Attorneys' Fees and Costs</u>

A court must grant reasonable attorneys' fees and costs in ERISA actions "brought by fiduciaries to enforce the terms of the collective bargaining agreement." <u>Ara Plumbing Corp.</u>, 2026 WL 31332, at *3 (citation and internal quotation marks omitted).

Courts in the Second Circuit apply the "lodestar" method to calculate reasonable attorneys' fees by multiplying a reasonable hourly rate by the "reasonable number of hours required by a case." <u>Trs. of the Pavers and Road Builders Dist. Council Welfare, Pension, and Annuity Funds v. AAL Constr. Servs. LLC</u>, No. 25-CV-3419, 2026 WL 879771, at *10 (E.D.N.Y. Mar. 31, 2026), <u>report and recommendation adopted</u>, Apr. 20, 2026 Elec. Order (E.D.N.Y.). To determine a reasonable hourly rate, courts "look[] to the hourly rates that attorneys charge for comparable work." <u>Id.</u>; <u>see also</u> <u>Gesualdi v. Bestech Transp., LLC</u>, No. 14-CV-1110, 2022 WL 866853, at *2 (E.D.N.Y. Mar. 23, 2022) ("The reasonableness of hourly rates is guided by the market rate '[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation,' . . . and the relevant community is generally the 'district in which the court sits.'"). The party seeking attorneys' fees must submit sufficient evidence, including contemporaneous billing records, to support the hours worked and the rates claimed. <u>See</u> <u>id.</u>

12

"The ordinary rates for attorneys in the Eastern District of New York are approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." Trs. of the Pavers and Road Builders Dist. Council Welfare, Pension, and Annuity Funds v. Site Fencing, Inc., No. 23-CV-2680, 2024 WL 1082700, at *9 (E.D.N.Y. Mar. 11, 2024). Adjusting for inflation and market changes, however, courts in this District have recently found that hourly forum rates are now approximately $450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals. See Rubin v. HSBC Bank USA, NA, 763 F. Supp. 3d 233, 243-45 (E.D.N.Y. 2025).

Arthur J. Muller III, Esq., a partner at Trivella & Forte, LLP, acted as Plaintiffs' lead counsel in this matter and was assisted by a paralegal, Anna Chiarolanza. (See Muller Decl. ¶¶ 36, 44.) Muller has represented plaintiff-funds in similar ERISA actions since 2015, acting as lead counsel in most. (See id. at ¶ 39.) As a partner of the firm, Muller billed at an hourly rate of $510.00 and recorded a total of about 12 billable hours throughout this action. (See id. at ¶ 43; Attorney Billing Records, Ex. 5, ECF No. 13-5, attached to Muller Decl.) Chiarolanza has worked as a paralegal at Plaintiffs' counsel's firm for "well over a decade," and currently bills at an hourly

13

rate of $134.00.    (Muller Decl. ¶ 44.)    Throughout this action, Chiarolanza billed less than half an hour.  (See Attorney Billing Records, Ex. 5, attached to Muller Decl.)

Pursuant to Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D), and Article XI, Section 5(d) of the Trust Agreement (see Trust Agreement, Ex. 1, ECF No. 14-1, attached to Puccio Decl.), Plaintiffs seek an award of $8,175.45 in attorneys' fees. The Court finds the requested fees comparable to those awarded in other actions within this District and presumptively reasonable. See Gesualdi v. Cropsey Scrap Iron & Metal Corp., No. 24-CV-3687, 2025 WL 1589244, at *3 (E.D.N.Y. June 5, 2025) (awarding $495 per hour for Muller's time in a recent ERISA action); cf. also NYC Dist. Council of Carpenters Pension Fund v. Quantum Constr., No. 06-CV-13150, 2008 WL 5159777, at *13 (S.D.N.Y. Dec. 9, 2008) (awarding $425 per hour for partner time in a now 17-year-old ERISA delinquent contribution case).  The Court has also reviewed Plaintiffs' counsel's contemporaneous time records and finds the hours dedicated to litigating this action are reasonable. Accordingly, the Court awards Plaintiffs $8,175.45 in attorneys' fees.

Plaintiffs also request $667.60 in costs related to this action.  (See Muller Decl. ¶ 47.)  Plaintiffs support this request with an itemized list of costs for mailing, filing fees, and

14

service of process (see id. at ¶ 46; Bill of Costs, Ex. 5, ECF No. 13-5, attached to Muller Decl.).  See Ara Plumbing Corp., 2026 WL 31332, at *3 ("Courts typically allow counsel to recover their reasonable out-of-pocket expenses." (citation and internal quotation marks omitted)).  Plaintiffs' well-supported request for $667.60 in costs is reasonable and is, thus, granted.

C. The Court Grants Partial Injunctive Relief

The Court is also permitted to grant injunctive relief in ERISA actions.  See 29 U.S.C. § 1132.  Plaintiffs seek an injunction "[o]rdering Defendants to submit to a complete audit by providing the Funds with all its pertinent books and records for the period commencing December 29, 2021."  (Compl. at p. 18.) However, awarding Plaintiffs this requested injunctive relief along with the above-detailed damages (see supra Part II(B)(1)) could result in unreasonable, duplicative recovery.  See Cropsey Scrap Iron & Metal Corp., 2025 WL 1589244, at *4 (finding an injunction ordering defendants to submit to an audit for the same period for which plaintiffs were awarded estimated damages according to the terms of the subject trust agreement "unreasonable").  Therefore, the Court partially grants Plaintiffs' request for an injunction (1) ordering Defendants to submit to an audit for the limited period between December 29, 2021, through and including October 31, 2022, (2) but declines to

15

order Defendants to submit to an audit for the period Plaintiffs have estimated Defendants' delinquent contributions (i.e., November 2022 through October 2025 (see supra Part II(B)(1)(iii)).

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion as against all Defendants (ECF No. 12) is **GRANTED to the following extent**: Plaintiffs are awarded (1) damages in the amount of $244,365.99, and attorneys' fees and costs in the amount of $8,843.05; and (2) an injunction ordering Defendants to submit to an audit for the limited period between December 29, 2021, through and including October 31, 2022.

**IT IS FURTHER ORDERED** that, by no later than May 13, 2026, Plaintiffs shall file a proposed default judgment order consistent with this Memorandum and Order ("Order") for the Court's consideration.

**IT IS FURTHER ORDERED** that Plaintiffs shall mail a copy of this Order to Defendants at their last known business address(es) and file proof of such mailing on the docket within seven days of mailing.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: May 6, 2026
       Central Islip, New York

16